[No. B053812. Second Dist., Div. Seven. May 23, 1991.]

ADAM REYGOZA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Ronald A. Ziff and Abby Besser Klein for Petitioner.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

No appearance for Real Party in Interest.

## OPINION

**WOODS (Fred), J.**—Defendant filed a petition seeking a writ of mandate ordering the superior court to honor his motion pursuant to Code of Civil Procedure section[1] 170.6 to disqualify the Honorable Beauford Phelps, judge of the superior court. Defendant's motion was denied as being untimely pursuant to a policy (Court Policy) enacted by the Criminal Departments of the Central District of the Superior Court of Los Angeles County (Central District Criminal Departments). The issue presented to us is whether the Court Policy, which provides that cases assigned to a department are

---

[1]Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

assigned to the presiding judge of that department for all purposes, is a valid policy. We conclude that it is not and grant the writ petition.

## FACTUAL AND PROCEDURAL SYNOPSIS

On September 12, 1990, an information was filed charging defendant with one count of a violation of Health and Safety Code section 11350 (possession of cocaine).

The information resulted from an order holding defendant to answer following a preliminary examination on August 28, 1990, in the Municipal Court for Los Angeles County, East Los Angeles Judicial District. At the conclusion of the hearing, the Honorable Carlos de la Fuente, Commissioner, ordered that defendant be arraigned on September 12, 1990, in department 133 of the superior court.

. On September 12, 1990, defendant was arraigned in department 133 before the Honorable Beauford Phelps and entered a plea of not guilty. At that time, the matter was set for pretrial conference in department 133 on October 10, 1990. No date for motion and/or trial was set prior to October 10, 1990.

On October 10, 1990, defendant filed a motion and declaration pursuant to section 170.6. The Honorable Beauford Phelps denied the peremptory challenge as being untimely pursuant to the Court Policy.[2]

The Court Policy reads as follows:

### "STATEMENT OF POLICY

### "CENTRAL DISTRICT CRIMINAL DEPARTMENTS

"All criminal calendar Departments of the Central District of the Los Angeles Superior Court are designated as direct calendar courts. This designation applies to Departments 111 through Department 134, . . . The designation applies to criminal courts located in the Criminal Courts Building, 210 W. Temple St., Los Angeles 90012.

"ANY CASE ASSIGNED TO A DIRECT CALENDAR COURT IS ASSIGNED TO THE JUDGE PRESIDING IN THAT COURT FOR ALL PURPOSES, INCLUDING TRIALS.

---

[2]Although the minute order only states that the motion was dismissed as untimely pursuant to section 170.6, since both parties have addressed the issue as being a dismissal pursuant to the Court Policy, we shall treat it as such.

"The judges presiding in Departments 111 through Department 134 are as follows: . . . D133-Beauford Phelps, . . .

"In order to be timely, a challenge pursuant to C.C.P. Section 170.6(2) must be filed within ten (10) days of the defendant's first appearance in the direct calendar court."

DISCUSSION

## I. *Introduction*

The time limits in which a peremptory challenge to a judge must be made are set forth in section 170.6, subdivision (2).[3]

■ "Section 170.6 sets forth a procedure by which a party or attorney for a party may move to disqualify a judge. The motion must be supported by an affidavit to the effect that the judge is prejudiced against the party or his attorney so that the party cannot, or believes he cannot, obtain an impartial trial. If the motion is timely and in proper form, the judge must recuse himself and the case must be reassigned to another judge." (*People* v. *Superior Court* (*Hall*) (1986) 160 Cal.App.3d 1081, 1083 [207 Cal.Rptr. 131].)

In *Hall*, the court recognized that: "As a general rule, a motion pursuant to section 170.6 may be made at any time prior to commencement of the trial or hearing." (160 Cal.App.3d at p. 1083.) At the time that *Hall* was decided, there were 2 exceptions to this general rule—the "master calendar" exception and the "10-day 5-day" exception. (*Ibid.*) The 1989 amendment, which was effective as of January 1, 1990, added a third exception. (See Amendments, Deering's Ann. Code Civ. Proc., § 170.6 (1991 pocket supp.) p. 108.) This exception, which can be described as "for all purposes," provides that for cases assigned to a judge for all purposes, the motion must be made within 10 days after notice of the all purpose assignment or, if the party has not yet appeared, then within 10 days after the appearance.

---

[3]Section 170.6, subdivision (2) provides in relevant part:
". . . Where the judge, other than a judge assigned to the case for all purposes, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. If directed to the trial of a cause which has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 10 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 10 days after the appearance. . . ."
(Underlined portion added effective Jan. 1, 1990.)

## II. *Court Interpretation of Section 170.6*

In *People* v. *Superior Court (Hall), supra,* 160 Cal.App.3d 1081, the Second Appellate District concluded that assignment to a department, rather than to a particular judge, was not the equivalent of an assignment "for all purposes." The *Hall* court reasoned that: " 'There is an uncertainty necessarily inherent in the practice of assigning a cause to a particular department but not to a named judge. The all too common continuance adds unknown variables. A consequent and undue hardship on the litigant flows which negates the underlying thrust of . . . section 170.6—to grant to the litigant a single reasonable opportunity to disqualify a *known* trial judge.' " (Original italics.) (*Id.,* at p. 1085.)

The court also noted that: " '[A] change of judge may occur in the designated department. No certainty arises a particular judge will hear the case from the fact of assignment, only, to a department. Vacation, illness and reassignment are common occurrences and upset best laid plans.' " (160 Cal.App.3d at p. 1085.) The court further observed that: "Courts have been reluctant to apply the ten-day five-day rule in this type of situation [where assignment was to a department] because of the uncertainty accompanying such an assignment; a litigant might exhaust his right to one peremptory challenge on a judge who may not ultimately preside at the hearing or trial." (*Id.,* at p. 1084.)

In *Mackey* v. *Superior Court* (1990) 221 Cal.App.3d 1124, 1126 [270 Cal.Rptr. 905], the court noted that the judges of the east branch of the superior court had taken the position that the 1989 amendment was applicable to criminal cases assigned from municipal court to a particular superior court department under a "direct calendaring" system. *Mackey* was decided by Division Five of the Second Appellate District, the division which decided *Hall.* The *Mackey* court held that the 1989 amendment to section 170.6 did not affect *Hall*'s holding that matters assigned to a particular. department rather than to a particular judge were subject to the "10-day/5-day" rule. (*Id.,* at p. 1127.)

In August 1990, the Central District Criminal Departments published[4] in the Daily Journal the Court Policy set out in the factual synopsis. The

---

[4]In defendant's writ petition, he stated that the Court Policy had not been published in the Daily Journal. In an unverified opposition to the writ petition, respondent states that the Court Policy was widely distributed and includes a copy of the "Notices to Attorneys" section of the August 24, 1990, Daily Journal in which the Court Policy was published.

Although respondent did not authenticate the copy of the published notice by filing an accompanying declaration under penalty of perjury, since defendant did not dispute respondent's claim in his reply, we assume that there is no remaining question as to the publication of the Court Policy.

essential provision of the Court Policy is that: "Any case assigned to a direct calendar court is assigned to the judge presiding in that court for all purposes, including trials." The policy includes a list of the departments and their presiding judges. In essence, the policy incorporates part of the "for all purposes" exception of section 170.6 by stating that a 170.6 challenge must be filed within 10 days of the defendant's first appearance in the direct calendar court.

The issue we are called upon to decide is whether the Court Policy overrides *Mackey*, thus converting an assignment to a department in the Central District Criminal Departments to an assignment "for all purposes" for the filing of a section 170.6 motion.

### III. *The Instant Case*

On August 28, 1990, the municipal court ordered that petitioner be arraigned on September 12, 1990, in Department 133 of the superior court. Petitioner was arraigned on September 12, 1990, in Department 133, before the Honorable Beauford Phelps. At that time, the matter was set for pretrial conference in Department 133 on October 10, 1990. No date for motion and/or trial was set prior to October 10, 1990. On October 10, 1990, petitioner's section 170.6 motion was denied as being untimely pursuant to the Court Policy.

In the instant case, as in *Hall*, the master calendar exception is inapplicable as the Central District is on a direct calendaring system. Petitioner contends that since his case was assigned to Department 133, it was not assigned to a judge for all purposes, and therefore his filing of the peremptory challenge was timely under the "10-day/5-day" rule of section 170.6 since he filed the peremptory challenge before any date for motions or trial had been set. The "10-day/5-day" rule or exception applies where the judge is known[5] at least 10 days before the date set for trial or hearing and requires that the motion be made at least 5 days before that date.

At first glance, it would appear that under the "10-day/5-day" rule, petitioner's motion was untimely as not having been filed 5 days before the pretrial conference hearing. However, section 170.6, subdivision (2) also provides that: ". . . The fact that a judge, court commissioner, or referee

---

[5]By applying the "10-day/5-day" rule, *Hall* and *Mackey* impliedly concluded that although assignment to a department is not an assignment to a judge for all purposes, assignment to a department can be considered an assignment to a known judge. Some cases have taken the position that assignment to a department is not assignment to a known judge. (See our discussion in *Lawrence* v. *Superior Court* (1988) 206 Cal.App.3d 611, 616-617 [253 Cal.Rptr. 748].)

has presided at or acted in connection with a pretrial conference or other hearing, proceeding or motion prior to trial and not involving a determination of contested fact issues relating to the merits shall not preclude the later making of the motion . . . ." Since petitioner could have made a peremptory challenge after the pretrial conference and since no trial and/or contested fact motion date had been set, we conclude that petitioner's motion was timely.

## IV. *The Court Policy*

Local rules are expressly authorized by Government Code section 68070, which, in relevant part, provides that: "Every court may make rules for its own government and the government of its officers *not inconsistent with law* or with the rules adopted and prescribed by the Judicial Council." (Italics added.) Rules adopted by the court include "every rule, regulation, order, *policy*, form, or standard of general application adopted by a superior court or municipal court to govern practice or procedure, . . ." (Italics added.) (Cal. Rules of Court, rule 981(d).) Thus, local policies "have been held to have the legal effect of procedural statutes, so long as they are *not contrary to higher law*." (Italics added.) (*Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 504-505 [120 Cal.Rptr. 176].)

■ A decision of the Court of Appeal is binding on the trial courts. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 771, p. 740.)

■ The Court Policy is inconsistent with and contrary to the holdings of *Hall* and *Mackey*. As a matter of fact, respondent admits that its policy was enacted as a direct response to *Mackey*, but insists that it is valid as it is consistent with the similar provisions of the "Fast Track" rules of the Los Angeles Superior Court upheld in *Beverly Union Co.* v. *Superior Court* (1988) 206 Cal.App.3d 40 [253 Cal.Rptr. 359] and *Lawrence* v. *Superior Court, supra,* 206 Cal.App.3d 611. Not only is the Court Policy inconsistent with higher law, it was intended to circumvent that law.

*Beverly Union* and *Lawrence* are civil "Fast Track" or Trial Court Delay Reduction Act of 1986 (Gov. Code, § 68600 et seq.) cases. As such, they were matters which had been assigned not to a department, but to a judge for all purposes pursuant to duly adopted local court rules; rules which require a party to make a peremptory challenge within 10 days of the notice of assignment to an I/C judge.[6] The issue before the court in those cases was whether the parties had had notice of the assignment to the judge. Those

---

[6]"An I/C judge is a pilot project judge. 'I/C' refers to 'individual calendar.' " (*Beverly Union Co.* v. *Superior Court, supra,* 206 Cal.App.3d 40, 42, fn. 2.)

cases are inapposite as we have a criminal case assigned to a department rather than to a named judge, and the issue here is not notice, but rather whether the Court Policy effected an assignment to a judge for all purposes, i.e., was there in fact an assignment for all purposes.

■ For a civil case, "the entire purpose of an all-purpose assignment [is] to expedite complex matters by permitting one judge to handle the entire matter from start to finish, acquiring an expertise regarding the factual and legal issues involved which will expedite the process." (*Augustyn* v. *Superior Court* (1986) 186 Cal.App.3d 1221, 1228 [231 Cal.Rptr. 298].) For criminal cases, the overwhelming concern is with the defendant's speedy trial rights. As indicated in *Hall* and based on our own experience, in Los Angeles County Superior Court, the judge to whom a criminal case is assigned often is not the trial judge as the case has to be transferred in order to meet speedy trial deadlines.

■ "[The Trial Court Delay Reduction project] clearly represented a fundamental change in the approach to the problem of court congestion. It embraced the principle of active judicial management which required that trial judges aggressively monitor and manage litigation from the filing of the first pleading until final disposition. This effort to transfer control of the pace and timing of litigation from the lawyers to the trial judge was a major departure from long-accepted traditional practice." (*International Union of Operating Engineers* v. *Superior Court* (1989) 207 Cal.App.3d 340, 350 [254 Cal.Rptr. 782].) ■■■ The record contains no indication that such a major change has occurred with regard to how criminal cases are handled.[7]

■ The Court Policy does nothing more than attempt to override *Hall* and *Mackey*. It does not change the situation in the criminal departments whereby cases are reassigned in order to meet speedy trial deadlines. The Court Policy does not increase the power of the judges to control their "assigned" cases nor does it preclude a judge/department from transferring a case to another judge/department for trial. There is no indication in the policy or respondent's brief that the policy changed the practice of transferring criminal cases.

When the Legislature added to section 170.6, subdivision (2), the provision that a peremptory challenge could be made to a judge who had presided

---

[7]For the first time at oral argument, respondent argued that the Court Policy was part of a plan to change the "local legal culture" and that the Central District Criminal Departments had been transformed into direct calendar courts. As no support for these statements is contained in the record, we disregard respondent's belated attempts to do so by way of a declaration sent to us after the matter had been submitted following oral argument since petitioner had no opportunity to cross-examine respondent about the factual statements contained in that declaration. (See 9 Witkin, Cal. Procedure, Appeal, *supra*, § 547, p. 535.)

at a pretrial conference or other hearing so long as the hearing had not involved a determination of contested fact issues, one of the reasons for the change offered by the State Bar was to "'preserve the motion for the important situation where fact determinations are involved, such as trials.'" (*In re Abdul Y.* (1982) 130 Cal.App.3d 847, 858 [182 Cal.Rptr. 146].)

We appreciate the Central District Criminal Departments' need to control and manage their case loads and recognize that the court would like a defendant to make his or her peremptory challenge as soon as possible. However, in criminal cases, to force a defendant to file a peremptory challenge within 10 days of his or her appearance in superior court, defeats the purpose of section 170.6 to provide the defendant a reasonable opportunity to challenge a known trial judge. A challenge made that early in a criminal case, at least in Los Angeles County Superior Court, will very likely be wasted on a judge who will not be the defendant's trial judge.

Accordingly, we hold that the Court Policy is invalid as it is inconsistent with the holdings of *Hall* and *Mackey*, which continue to be the applicable authority for the application of 170.6 motions in criminal cases assigned to departments, rather than to a judge, of the Superior Court of Los Angeles County.[8]

There is an inherent problem in applying section 170.6 to criminal cases because of the difficulty of determining a point at which there is a *known trial* judge. As noted earlier, the appellate courts are not even in agreement as to whether or not an assignment to a department is an assignment to a known judge. With the institution of the Trial Court Delay Reduction program and the difficulty of applying section 170.6 to criminal cases, perhaps it is time for the Legislature to take a look at a complete revision of section 170.6.

## DISPOSITION

The alternative writ is discharged. Let a peremptory writ of mandate issue, commanding respondent court to vacate its order of October 10, 1990,

---

[8]On April 4, 1991, Division Five of the Second Appellate District, the division which decided *Hall* and *Mackey*, reached a similar conclusion in *People* v. *Superior Court (Gonzales)* (1991) 228 Cal.App.3d 1588 [279 Cal.Rptr. 679]. Faced with a peremptory challenge which had been denied pursuant to the Court Policy, Division Five held that the issue of the timeliness of the challenge was controlled by *Mackey*, that the Court Policy was inconsistent with the law, and, therefore, the peremptory challenge had been timely.

denying petitioner's section 170.6 motion, and to enter a new and different order granting the motion.

Lillie, P. J., and Johnson, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 1, 1991. Lucas, C. J., was of the opinion that the petition should be granted.